UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHARLES WITHAM,

                Plaintiff,

v.

UNKNOWN PIGGOTT et al.,

                Defendants.

_____/

Case No. 1:24-cv-537

Honorable Sally J. Berens

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendant has not yet been served, the undersigned concludes that the Defendant is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way the Defendant is not a party who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record

2

does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues IBC Corrections Officers Unknown Piggott and Unknown Bennickson, as well as IBC Nurse Katherine West.

Plaintiff alleges that during mid-February of 2024, Defendants Piggott and Bennickson escorted him to a dental appointment. Plaintiff reports that he has no left arm. Defendant Piggott took the empty left sleeve of Plaintiff's coat and smacked Plaintiff's butt with it saying, "over and

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

over 'that ass is mines.'" (Compl., ECF No. 1, PageID.7.) Then Piggott took the left empty sleeve and put it around Plaintiff's neck and stated, "I choke my bitches too." (*Id*.) Plaintiff notes that Defendant Bennickson did nothing to stop Piggott but instead cheered him on stating "I'll tell you, this boy looks to have some good ass." (*Id*.) On the return trip from the dental appointment, Plaintiff claims that Piggott "continued his sexual desire." (*Id*., PageID.8.)

On February 23, 2024, Plaintiff placed a medical kite to Defendant West on his cell door. Defendant Piggott took the kite and read it out loud. The kite inquired regarding the MAT program, which Plaintiff describes as a program to cure illegal drug addictions. (*Id*., PageID.11.)

Plaintiff reports the following subsequent inappropriate behavior by Piggott, in the days that followed:

| | |
|---|---|
| 2/24/24 at 8:20 a.m. comment: | "You have pretty eyes." |
| at 10:42 a.m. comment: | "Take down your cover off the window baby." |
| at 1:20 p.m. comment: | "Why you acting like that, come on now." |
| at 1:22 p.m. comment: | "Come right back, smile at me." |
| at 1:42 p.m. comment: | "See you tomorrow." |
| 2/25/24 at 1:29 p.m. comment: | "I been busy on my wing. I'm still here baby." |
| 2/26/24 at 1:11 p.m. comment: | "What have I done? This how you do me?" |
| 2/28/24 at 8:41 a.m. bangs on the door and comment: | |
| | "Daddy's here, come here baby" |
| at 11:10 a.m. comment: | "What's wrong with you? |
| 2/29/24 at 9:40 a.m. comment: | "You need anything?" |
| At 9:43 a.m. comment: | "If I have to take it ruff, I can make it ruff for you." |

|  | 3/2/24 at 11:00 a.m., 11:04 a.m., 11:05 a.m., 12:37 p.m., 1:33 p.m. camera will show Piggott's strong pursuit[2] |
|---|---|
| 3/4/24 11:05 a.m. comment: | "Who are you telling? Are you being a snitch? 20 years ago I would have had you in my arms by now." |
|  | 3/8/24 at 8:40 a.m., 9:23 a.m., 11:45 a.m., 1:03 p.m., 1:32 p.m., Piggott appears to be agitated and becomes threatening saying "Okay, you won't be going home any time soon. |

(*Id.*, PageID.8–9.) Plaintiff explains that these comments are all the more troubling because Defendant Piggott is not assigned to Plaintiff's tier. On April 16, 2024, Piggot violently slammed Plaintiff's window shutter.

Plaintiff filed a Prison Rape Elimination Act (PREA)[3] complaint against Piggott, as well as grievances. Plaintiff reports that, as a result of the grievance regarding Piggott's reading of the medical kite, "Piggott exaggerated a misconduct of disobeying a direct order." (*Id.*, PageID.12.) Plaintiff was sanctioned by 30 days' loss of privileges. Plaintiff claims that such a severe punishment warrants due process protection, and he did not receive those protections at the disciplinary hearing.

---

[2] On this date, Piggott also threatened to push Plaintiff's earliest release date back. (Compl., ECF No. 1, PageID.10.) It is not clear how Piggott could accomplish that feat as the earliest release date is established by adding the combined minimum sentences Plaintiff was serving. Mich. Comp. Laws § 791.234(4).

[3] The PREA, as the title suggests, is intended to reduce the incidence of prison sexual assaults. One of the key purposes of the PREA was the development and implementation of national standards for the detection, prevention, reduction, and punishment of prison rape. 34 U.S.C. § 30302. The PREA directed the United States Attorney General to publish a rule adopting a national standard for the detection, prevention, reduction, and punishment of prison rape and then tied funding to the state to compliance with the national standards. *Id*. § 30307. The national standards are set forth in 28 C.F.R. Ch. I, Pt. 115. MDOC Policy Directive 03.03.140, Sexual Abuse and Sexual Harassment of Prisoners-Prison Rape Elimination Act (PREA) (eff. Apr. 5, 2021), and the PREA Manual for the MDOC, reflect the national standards.

Plaintiff claims that Defendants Piggott and Bennickson violated the PREA and the Americans with Disabilities Act (ADA), as well as the Fourth and Fourteenth Amendments by their sexual misconduct and discrimination in services and programs. Plaintiff also claims that Defendants Piggott and West violated the Health Insurance Portability and Accountability Act (HIPAA) by exposing Plaintiff's medical kites to other prisoners on the tier, and violated the ADA and Fourteenth Amendment by denying Plaintiff access to the MAT program. Finally, Plaintiff claims that Piggott violated Plaintiff's First Amendment rights by retaliating against Piggott through "an exaggerated misconduct" for Plaintiff's filing of a grievance. (*Id.*, PageID.14.)

Plaintiff asks the Court to compel Defendants to place him at a medical facility and to follow HIPAA. Plaintiff also asks the Court to award monetary damages.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    HIPAA

Plaintiff claims that Defendants Piggott and West violated Plaintiff's rights under HIPAA[4] because they permitted the disclosure of Plaintiff's healthcare information to other prisoners on the tier. Plaintiff cannot maintain these claims because there is no private cause of action for a HIPAA violation. *See Burley v. Rider*, No. 1:17-cv-88, 2018 WL 6033531, at *5 (W.D. Mich. Aug. 27, 2018), *R&R adopted*, 2018 WL 4443071 (W.D. Mich. Sept. 18, 2018); *see also Faber v. Ciox Health, LLC*, 944 F.3d 593, 596 (6th Cir. 2019) (noting that "HIPAA doesn't authorize a

---

[4] According to the Department of Health and Human Services, "[a] major goal of the [HIPAA] Privacy Rule is to assure that individuals' health information is properly protected while allowing the flow of health information needed to provide and promote high quality health care and to protect the public's health and well being. The Rule strikes a balance that permits important uses of information, while protecting the privacy of people who seek care and healing." U.S. Dep't of Health & Hum. Servs., *Summary of the HIPAA Privacy Rule*, https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html (last visited Sept. 15, 2024).

private cause of action."); *Pitchford v. Metro Nashville Police Dep't*, No. 3:19-cv-00256, 2021 WL 2474461, at *3 (M.D. Tenn. June 17, 2021) (collecting cases).

If Plaintiff believes that a HIPAA violation has occurred, his only recourse is to file a complaint with the Secretary of Health and Human Services. *See* 45 C.F.R. § 160.306; *see also Johnson v. Kuehne & Nagel Inc.*, No. 11-cv-02317-STA-cgc, 2012 WL 1022939, at *5 (W.D. Tenn. Mar. 26, 2012). Accordingly, Plaintiff's claims asserting violations of the HIPAA will be dismissed for failure to state a claim upon which relief may be granted.

### B.   PREA

Plaintiff claims that Defendants Piggott and Bennickson violated the PREA. Plaintiff "has no independent cause of action for any [individual's] failure to comply with the [PREA]." *Beeman v. Heyns*, No. 1:16-cv-27, 2016 WL 1316771, at *12 n.4 (W.D. Mich. Apr. 5, 2016) ("Although not addressed in the Sixth Circuit, district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff." (quoting *Montgomery v. Harper*, No. 5:14-cv-P38R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014))); *see also McCloud v. Prack*, 55 F. Supp. 3d 478, 482 n.2 (W.D.N.Y. 2014) ("[N]othing in the statute suggests that PREA intended to establish a private cause of action for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a cause of action by an inmate." (quoting *Amaker v. Fischer*, No. 10-cv-977, 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014))); *Barhite v. Berghuis*, No. 1:14-cv-670, 2014 WL 4627166, at *5 (W.D. Mich. Sept. 15, 2014) ("Plaintiff's request is predicated on the assumption that the PREA provides him a cause of action for Defendants' alleged sexual assaults. It does not."). Plaintiff's claims asserting violations of the PREA will, therefore, be dismissed for failure to state a claim upon which relief may be granted.

8

C.      ADA

Plaintiff alleges that Defendants have violated his rights as a disabled prisoner. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In other words, the ADA "prohibit[s] public or federally funded entities, including prisons, from discriminating against disabled individuals while operating services or programs." *Finley v. Huss*, 102 F.4th 789, 819–20 (6th Cir. 2024) (internal citations omitted). Therefore, to state a claim under the ADA, "a plaintiff must establish that (1) he has a qualifying disability, (2) he is otherwise qualified for a program, and (3) he was excluded from participation in, denied the benefits of, or subjected to discrimination under a program because of his disability." *Id*. at 820.

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates, *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998), The proper defendant for a Title II ADA claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted). Plaintiff sues Defendants in their respective official capacities for his ADA claims. (Compl., ECF No. 1, PageID.6 ("All Defendants are being sued in their . . . "official" capacity due to ADA claims.").)

As to Plaintiff's official capacity ADA claims, the State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1044–47. At this stage of the proceedings, the Court assumes, without deciding, that Defendants are not immune from liability in their official capacities under the ADA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1047 (citing cases).

Turning to the merits of Plaintiff's ADA claims, Plaintiff identifies two disabling conditions: first, with regard to the harassment by Piggott and Bennickson, Plaintiff notes that he is a "handicapped" prisoner because he has one arm (Compl., ECF No. 1, PageID.5); and second, with regard to his claim relating to the MAT program, he notes that he suffers from the disability of "drug addiction" (*id.*, PageID.11). Even accepting that Plaintiff's conditions fall within the definition of "disability," Plaintiff's allegations do not show that he was excluded from a service or program, denied accommodation, or discriminated against *due to his disability.* Plaintiff alleges no facts that support an inference that Piggott and Bennickson excluded Plaintiff from a program or denied him an accommodation. Moreover, to the extent that Defendants' harassment of Plaintiff can be described as discriminatory, Plaintiff has failed to allege facts to support an inference that Defendants discriminated against him through harassment because of his disability.

Similarly, although Plaintiff's allegations might support a claim that Defendants somehow excluded him from the MAT program, Plaintiff alleges no facts to support an inference that they excluded him because of his drug addiction. Indeed, it would be absurd to exclude prisoners from a drug addiction treatment program because of a drug addiction. Plaintiff's conclusory allegation of discrimination without specific supporting factual allegations fails to state a claim. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. For these reasons, Plaintiff's ADA claims will be dismissed.

### D.    Fourth Amendment

In Plaintiff's allegations regarding Piggott's and Bennickson's conduct while they escorted Plaintiff to his dental appointment, he makes passing reference to the Fourth Amendment. "Excessive force claims can be resolved under the Fourth, Eighth and Fourteenth Amendments – the applicable amendment depends on the plaintiff's status at the time of the incident: a free citizen in the process of being arrested or seized; a convicted prisoner; or someone in "gray area[s]"

around the two. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013). When a free citizen claims that a government actor used excessive force during the process of an arrest, seizure, or investigatory stop, we perform a Fourth Amendment inquiry into what was objectively "reasonable" under the circumstances. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Lanman v. Hinson*, 529 F.3d 673, 680 (6th Cir. 2008). These Fourth Amendment protections extend through police booking until the completion of a probable cause hearing. *Aldini v. Johnson*, 609 F.3d 858, 866-67 (6th Cir. 2010). When convicted prisoners bring claims of excessive force, we turn to the Eighth Amendment, which forbids the "unnecessary and wanton infliction of pain" that constitutes "cruel and unusual punishment," and specifically conduct that is malicious and sadistic. *Hudson v. McMillian*, 503 U.S. 1, 5, 7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *United States v. Budd*, 496 F.3d 517, 531-32 (6th Cir. 2007). Plaintiff's protection against the misconduct he alleges flows from the Eighth Amendment, not the Fourth Amendment; accordingly, Plaintiff's allegations that Defendants violated the Fourth Amendment fail to state a claim upon which relief may be granted.[5]

### E.      Fourteenth Amendment-Equal Protection

Plaintiff claims that Defendants Piggott and Bennickson violated Plaintiff's equal protection rights by virtue of their "sexual misconduct, sexual assault, and 'discrimination' of services and programs." (Compl., ECF No. 1, PageID.13.) Similarly, Plaintiff claims that Defendants Piggott and West violated Plaintiff's equal protection rights by exposing Plaintiff's medical records and, presumably, by denying Plaintiff access to the MAT program.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a

---

[5] Plaintiff's Eighth Amendment claims are addressed below.

direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff fails to allege any facts to suggest that he was treated differently than others, let alone that the others were similarly situated. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, for all of the reasons set forth above, Plaintiff fails to state a claim for violation of his Fourteenth Amendment equal protection rights.

### F.    Fourteenth Amendment-Due Process

Plaintiff does not specifically mention the Due Process Clause of the Fourteenth Amendment in his complaint, but he does suggest that the sanction he got for a Class II misconduct—30 days' loss of privileges—was severe enough to warrant due process protections

for the misconduct hearing under *Sandin v. Conner*, 515 U.S. 472 (1995). (Compl., ECF No. 1, PageID.12.) To the extent that Plaintiff is seeking to assert a due process claim related to the Class-II misconduct ticket, that claim lacks merit.

A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 486–87.

No matter what happened with respect to any misconduct ticket, the duration of Plaintiff's sentence would not change. Plaintiff is incarcerated for crimes committed during September of 2022 and January of 2024. *See* MDOC Offender Tracking Information System, https://mdocweb. state.mi.us/otis2/otis2profile.aspx?mdocNumber=732101 (last visited Sept. 15, 2024). The MDOC reward for serving time "misconduct free" has changed significantly over the last 25 years. For years inmates could earn "good time credits." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); Mich. Comp. Laws § 800.33. For prisoners who committed crimes on or after April 1 of 1987, however, "good time credits" were discontinued and replaced by "disciplinary credits." *Taylor*, 418 F. App'x at 412; Mich. Comp. Laws § 800.33. Then, for prisoners convicted of crimes committed on or after December 15, 1998, for a particular list of crimes, and on or after December 15, 2000, for all other crimes, "disciplinary credits" were replaced by "disciplinary time." *Taylor*, 418 F. App'x at 412; Mich. Comp. Laws § 800.34.

Plaintiff is subject to disciplinary time with regard to his indeterminate sentences for assault with the intent to commit murder; but not with regard to his life without parole sentence for first-degree murder. Mich. Comp. Laws § 800.34. Disciplinary time accrues when a prisoner is found guilty of a major misconduct. A prisoner's accumulated disciplinary time is submitted to the parole

board for consideration at parole reviews or interviews. The Sixth Circuit has concluded that "disciplinary time" never impacts the duration of a sentence in the sense contemplated by *Sandin*. *Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009).

Second, the sanctions for a disciplinary finding of guilt would not rise to the level of atypical and significant hardships. Under MDOC Policy Directive 03.3.105, Attachment D, the maximum sanctions for a Class-I misconduct conviction are as follows: 10 days of punitive segregation for each violation, but not to exceed 20 days for violations arising out of a single incident; 30 days of toplock (but not to be combined with punitive segregation); 30 days of loss-of-privileges sanctions, or 60 days maximum for multiple violations arising out of a single incident; and restitution. The sanctions for Class-II and Class-III misconducts are similar, but with shorter maximum durations.

The most significant sanction and, therefore, hardship, is placement in segregation. The Supreme Court has held that placement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). Lesser sanctions of toplock or loss of

14

privileges would certainly be no worse than segregation. Thus, any penalty Plaintiff might have faced because of Piggott's misconduct report would not rise to the level of an atypical and significant hardship. Accordingly, the Court finds that, to the extent pled, Plaintiff fails to state a plausible Fourteenth Amendment procedural due process claim with regard to the misconduct proceedings.

### G. Eighth Amendment-Sexual Harassment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Plaintiff alleges that Defendant Piggott hit Plaintiff on the butt several times with Plaintiff's empty left coat sleeve and made sexual remarks to Plaintiff on several occasions over a two-month period. Plaintiff alleges that Defendant Bennickson made a sexual remark while Piggott was hitting

Plaintiff's butt with the coat sleeve and failed to stop Piggott from hitting Plaintiff with the coat sleeve.

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, in the context of claims against prison officials, the Sixth Circuit has repeatedly held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not necessarily rise to constitutional dimensions. *See, e.g.*, *Ivey*, 832 F.2d at 954–55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (concluding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (finding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim).

Further, some courts, including the Sixth Circuit, have held that minor, isolated incidents of sexual touching coupled with offensive sexual remarks also do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005), *abrogated on other grounds by Maben v. Thelen*, 887 F.3d 252, 266–67 (6th Cir. 2018) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth

Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (finding that, where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault).

In contrast, repeated and extreme incidents may sufficiently state a claim. For example, the Sixth Circuit found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by demanding on multiple occasions that the prisoner expose herself and masturbate while the official watched and intimidated her into complying. *Rafferty*, 915 F.3d at 1095–96. The *Rafferty* court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.* at 1096.

*Rafferty*, however, is distinguishable from Plaintiff's claim. Here, Plaintiff alleges that on several occasions, Defendant Piggott made a sexual comment to Plaintiff. Few of the comments Plaintiff has identified are obviously "sexual" in nature, *see supra* pp. 4–5; although they might certainly qualify as innuendo. None of them demanded that Plaintiff engage in sexual conduct, as was the case in *Rafferty*. Moreover, the "sexual" touching at issue here—smacking Plaintiff on the butt with his coat sleeve—though coarse and unprofessional—does not rise to the level of an Eighth Amendment violation.

The Court does not minimize Plaintiff's experience; however, nothing in the complaint suggests that Defendant Piggott physically touched Plaintiff in a sexual way. Under the circumstances alleged by Plaintiff, Defendant Piggott's (and Defendant Bennickson's) remarks,

while offensive and unprofessional, do not evidence the sort of coercive sexual demand at issue in *Rafferty*. *See Rafferty*, 915 F.3d at 1095–96.

Accordingly, Plaintiff's Eighth Amendment claim against Defendants Piggott and Bennickson based on sexual harassment will be dismissed for failure to state a claim upon which relief may be granted.

### H.    Eighth Amendment-Excessive Force

In addition to Defendant Piggott smacking Plaintiff on the butt with his coat sleeve, Piggott also placed the sleeve around Plaintiff's neck. Construed liberally, those allegations might be an attempt to state an Eighth Amendment claim for the use of excessive force. The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

But not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson*, 503 U.S. at 9 (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights" (internal quotation marks omitted)). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal quotation marks omitted). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

However, the Court notes that the "absence of serious injury" is relevant to the Eighth Amendment inquiry. *Wilkins*, 559 U.S. at 37 (citing *Hudson*, 503 U.S. at 7).

> "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." [*Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)]. The extent of injury may also provide some indication of the

amount of force applied. As we stated in *Hudson,* not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.*, at 9–10 (some internal quotation marks omitted). An inmate who complains of a "'push or shove'" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Id.*, at 9 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973)).

*Wilkins*, 559 U.S. at 37–38.

Plaintiff's claim falls squarely into the *Wilkins* description of allegations that "almost certainly fail[] to state a valid excessive force claim." *Id*. at 38. Plaintiff states only that Defendant Piggott smacked him on the butt with his coat sleeve and put the sleeve around Plaintiff's neck. Plaintiff makes no mention of any resulting pain or injury. In light of the clear guidance of *Wilkins*, the Court concludes that the facts alleged by Plaintiff in describing the use of force and its consequences do not support an inference that the force used by Defendant Piggott against Plaintiff was excessive. Accordingly, Plaintiff has failed to state an Eighth Amendment excessive force claim against Defendants upon which relief may be granted.

## I.      First Amendment Retaliation

Finally, Plaintiff contends that Defendant Piggott retaliated against Plaintiff for the exercise of his First Amendment rights by filing an "exaggerated" misconduct. (Compl., ECF No. 1, PageID.14.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's

alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Accepting Plaintiff's allegations as true, the protected conduct that purportedly prompted the retaliation was Plaintiff's grievance against Piggott relating to the disclosure of Plaintiff's medical records. (*Id.*, PageID.11.) The Court concludes that Plaintiff engaged in conduct protected by the First Amendment.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). The "adverse action" at issue here is the "exaggerated misconduct."

Even seven days' loss of privileges—which includes loss of the rights to use the exercise facilities, to attend group meetings, to use the telephone, to have visitors, to access the general library, and to access the activity room—amounts to adverse action. *Maben*, 887 F.3d at 266–67 (quoting *Hill v. Lapin*, 630 F3d 468, 474 (6th Cir. 2010)) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"). Therefore, Plaintiff has alleged sufficient facts to show that Defendant Piggott's writing of a Class II misconduct would rise to the level of an adverse action.

21

Plaintiff's retaliation claim falters at the third step. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive Section 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004).

Here, Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendants' actions were motivated by any of his protected conduct. Indeed, Plaintiff alleges no facts to support an inference that Defendant Piggott was even aware of that grievance. The grievance was rejected; Plaintiff was on modified access to the grievance

22

system. (Compl., ECF No. 1, PageID.10–11.) Plaintiff merely concludes that, because he is able to identify a grievance he filed before[6] the misconduct was written, Defendant Piggott's writing of the misconduct must have been motivated by the grievance. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 438 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). Plaintiff offers nothing more than a suggestion that one event occurred before the other. To the extent he relies upon temporal proximity, he has failed to allege facts to support an inference that the events were even temporally proximate. These allegations are insufficient to state a retaliation claim. Accordingly, Plaintiff's retaliation claim will be dismissed.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United*

---

[6] Plaintiff does not actually allege the order of these events. He does not provide the date he filed the grievance, the date it was rejected, or the date that Defendant Piggott wrote the misconduct report. The Court presumes, for purposes of this analysis that the grievance preceded the misconduct report.

*States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of Section 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:    September 24, 2024            /s/ Sally J. Berens
                                        SALLY J. BERENS
                                        United States Magistrate Judge